*NOT FOR PUBLICATION*

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| IVAN ROGERS AND MARIE ROGERS, HUSBAND AND WIFE,<br><br>    Plaintiffs,<br><br>v.<br><br>RUSHMORE LOAN MANAGEMENT SERVICES, LLC,<br><br>    Defendant. | Civil Action No. 20-13084 (FLW)<br><br>**OPINION** |

**WOLFSON, Chief Judge:**

This matter arises out of collection of a mortgage debt. Plaintiffs Ivan Rogers and Marie Rogers ("Plaintiffs") brought this action against Defendant Rushmore Loan Management Services, LLC ("Rushmore" or "Defendant") for violation of the Federal Debt Collection Practices Act, 15 U.S.C. § 1692 ("FDCPA"), alleging that Defendant unlawfully attempted to collect late fees that were not included in their Final Judgment of Foreclosure and wrongfully failed to review their loan modification application. Presently before the Court is Defendants' Motion to Dismiss the Complaint for failure to state a claim under Fed. R. Civ. P. 12(b)(6). For the following reasons, Defendant's motion is **GRANTED**, and Plaintiffs' Complaint against Defendant is **DISMISSED** with prejudice.

I.  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On July 1, 2017, Plaintiffs defaulted on their mortgage held by World Savings Bank, FSB. As a result, Wells Fargo Bank, the servicer of the loan, commenced a foreclosure action against Plaintiffs in the Superior Court of New Jersey, Chancery Division, Monmouth County ("State

1

Foreclosure Action"), to which Plaintiffs filed an Answer with affirmative defenses. As part of a consent order between the parties, the Answer was withdrawn, and Wells Fargo Bank obtained a Final Judgment of Foreclosure on February 26, 2019, in the amount of $1,272,972.74. To date, no sheriff's sale has occurred.

On June 11, 2019, Defendant became the loan servicer on behalf of a new mortgage holder, MTGLQ Investors. At that time, Defendant began to send Plaintiffs monthly statements, which in February and March 2020, contained several late charges in the amount of $226.67 each, for the period of September 1, 2019 through March 11, 2020. On June 24, 2020, Plaintiffs, in an attempt to prevent their home from being sold at a sheriff's sale, submitted a loan modification application to Defendant. According to Plaintiffs, they did not receive an acknowledgment that their application had been received, and as a result, they subsequently served a "Request for Information and Notice of Error" upon Defendant on July 8, 2020. Soon thereafter, Plaintiffs received notice from Defendant, dated June 26, 2020, stating the need for additional information. The additional information requested was purportedly sent by Plaintiffs in a letter dated July 20, 2020; however, Defendant advised in a letter on July 28, 2020, that because the requested information was not received, it was closing Plaintiffs' file. In response, Plaintiffs served an additional "Request for Information and Notice of Error" upon Defendant on August 10, 2020, claiming that they had provided the requested information and their file was closed in error. On August 20, 2020, Plaintiffs allege that notwithstanding their Notice of Error, Defendant nevertheless reaffirmed its decision to close the file, since the requested information was not timely received.

Plaintiffs received reinstatement figures from MTGLQ, through its counsel in the foreclosure action, that included $906.00 in late fees owed. Subsequently, on September 17, 2020, Plaintiffs allege that they submitted a new loan modification application; however, Plaintiffs do

not provide any additional information regarding that application, nor do they indicate the status of that application..

On September 23, 2020, Plaintiffs filed their Complaint in this Court seeking damages, costs, and attorney's fees pursuant to the FDCPA. Specifically, Plaintiffs allege that Defendant engaged in unlawful debt collection practices by misrepresenting the completeness of, and refusing to review, their loan modification application, and charging late fees that were not a component of the Final Judgment of Foreclosure. On October 26, 2020, prior to its deadline to answer, Defendant filed this Motion to Dismiss.

## II.     LEGAL STANDARD

Under Fed. R. Civ. P. 12(b)(6), a court may dismiss an action if a plaintiff fails to state a claim upon which relief can be granted. A court evaluating a Rule 12(b)(6) motion must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Phillips v. Cnty. Of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). A court's consideration is limited to the facts alleged in the complaint, "documents attached to or submitted with the complaint," and "matters of public record, [and] orders." *Buck v. Hampton Tp. School Dist.*, 452 F.3d 256, 260 (3d Cir. 2006). In order to survive a motion to dismiss, a complaint must contain sufficient facts which, when accepted as true, "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 554 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In order to determine whether a complaint has satisfied the facial plausibility standard under *Iqbal* and *Twombly*, the court conducts a three-part analysis. *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d. Cir. 2010). First, the court must "tak[e] note of the elements a plaintiff

must plead to state a claim." *Id*. (quoting *Iqbal*, 556 U.S. at 675). Second, the court must identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id*. (quoting *Iqbal*, 556 U.S. at 679). Specifically, a complaint will not suffice if it "offers labels and conclusions or a formulaic recitation of the elements of a cause of action" *Iqbal*, 556 U.S. at 678, or one that merely states "unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation." *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). Third, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Santiago*, 629 F.3d at 131 (quoting *Iqbal*, 556 U.S. at 680). This analysis is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

### III. DISCUSSION

Defendant contends that Plaintiffs' FDCPA action is barred by New Jersey's entire controversy doctrine, arguing that the claims in this action arise from the same "core set of facts," *i.e.*, the mortgage transaction, that is the subject of the State Foreclosure Action, and as a result, are "germane" to the State Foreclosure Action. In response, Plaintiffs contend that their claims arose after the Final Judgment of Foreclosure was filed, and therefore, are not germane to the State Foreclosure Action. I disagree with Plaintiffs' position.

New Jersey's entire controversy doctrine is "an extremely robust claim preclusion device that requires adversaries to join all possible claims stemming from an event or series of events in one suit." *Chavez v. Dole Food Co.*, 836 F.3d 205, 228 n.130 (3d Cir. 2016). When the court finds that a claim not joined under the original action falls within the scope of the doctrine, that claim is barred. N.J. Ct. R. 4:30A. *Id.* The doctrine "seeks to further the judicial goals of fairness and

4

efficiency by requiring, whenever possible, that the adjudication of a legal controversy should occur in one litigation in only one court." *Coleman v. Chase Home Fin., LLC ex rel. Chase Manhattan Mortg. Corp.*, 446 F. App'x 469, 471 (3d Cir. 2011) (quoting *Circle Chevrolet Co. v. Giordano, Halleran & Ciesla*, 142 N.J. 280, 662 A.2d 509, 513 (1995)). The doctrine is also applicable to New Jersey claims brought in federal court. *Id.* (citing *Bennun v. Rutgers State Univ.*, 941 F.2d 154, 163 (3d Cir.1991).) However, application of the entire controversy doctrine is "equitable in nature" and based substantially on "judicial fairness," meaning that the Court must balance considerations of judicial efficiency as well as fairness to the litigants. *Id.* (citing *Cafferata v. Peyser*, 251 N.J. Super. 256, 597 A.2d 1101, 1103 (1991)). The application of the entire controversy doctrine turns on three criteria: "(1) the judgment in the prior action must be valid, final, and on the merits; (2) the parties in the later action must be identical to or in privity with those in the prior action; and (3) the claim in the later action must grow out of the same transaction or occurrence as the claim in the earlier one." *Venner v. Bank of Am.*, 2009 WL 1416043, at *2 (D.N.J. May 19, 2009) (quoting *Watkins v. Resorts Int'l Hotel and Casino, Inc.*, 591 A.2d 592, 599 (N.J. 1991)). Indeed, "[a]s a variant of res judicata, which requires 'the existence of a prior judgment that is final, valid, and on the merits[,] ... the Entire Controversy Doctrine does not preclude the initiation of a second litigation before the first action has been concluded.'" *Youssef v. Dep't of Health & Senior Servs.*, 423 F. App'x 221, 223 (3d Cir. 2011) (quoting *Rycoline Prods., Inc. v. C & W Unlimited*, 109 F.3d 883, 889 (3d Cir.1997)).[1]

---

[1] Notably, entry of a final judgment in a foreclosure action has been found to constitute a judgment that is "valid, final, and on the merits" for the purpose of applying the entire controversy doctrine. *Dennis v. MERS/Merscorp Mortg. Elec. Registration Sys., Inc.*, No. 11-4821, 2011 WL 4905711, at *2 (D.N.J. Oct. 13, 2011) (dismissing a plaintiff's complaint based on the entire controversy doctrine because the plaintiff had "already received a final judgment in a foreclosure action" and her claims in the federal action were germane to the state court action); *Scafe v. Wells Fargo Home Mortg. Wells Fargo Bank N.A.*, No. 15-5763, 2016 WL 5334658, at *7 (D.N.J. Sept.

New Jersey courts have held that the primary consideration in determining if successive claims are part of the same controversy is whether the claims "arise from related facts or from the same transaction or series of transactions." *Id.* (quoting *DiTrolio v. Antiles*, 142 N.J. 253, 662 A.2d 494, 502 (1995). It is a "commonality of facts, rather than [a] commonality of issues, parties, or remedies that defines the scope of the controversy." *Id.* (citing *DiTrolio*, 662 A.2d at 504). The limits of the entire controversy doctrine with regards to foreclosure actions are necessarily somewhat narrower, as N.J. Ct. R. 4:64–5 requires that only "germane" counterclaims may be joined in a foreclosure action. *Id.* (citing N.J. Ct. R. 4:30A). Claims are considered to be "germane" to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action. *Id.* (citing *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353, 349 A.2d 96, 98 (App Div. 1975)).

Here, as in this Court's recent decision in *Hager v. Selene Finance LP*, No. 19-13650, 2020 WL 5422825, at *6 (D.N.J. Sept. 10, 2020), I find the Third Circuit's decision in *Coleman* to be instructive. There, the defendant-mortgagor filed a foreclosure action in the Chancery Division of the New Jersey Superior Court, following the plaintiff-homeowner's default on her loan. *Coleman*, 446 F. App'x at 470. Although the state court entered judgment in favor of the defendant, the plaintiff did not pay the judgment, and the foreclosure sale was delayed for approximately three and a half years while the plaintiff filed three bankruptcy proceedings. *Id.*

---

22, 2016) (dismissing a plaintiff's FDCPA claims based on the entire controversy doctrine because they arise from a mortgage that was the basis of a state court foreclosure action, for which a final judgment was entered); *Rendon*, No. 19-20290, 2020 WL 6802449, at *5 (D.N.J. Nov. 19, 2020) (finding that a prior state court action that concluded with a final judgment on the merits satisfied the first condition of the entire controversy doctrine); *see also DeHart v. U.S. Bank, N.A. ND*, 811 F. Supp. 2d 1038, 1045 (D.N.J. 2011) (declining to apply the entire controversy doctrine where the New Jersey Chancery Court had not yet entered final judgment in the underlying foreclosure action).

After dismissal of the third bankruptcy proceeding, the defendant sent the plaintiff a quote for reinstating the mortgage in return for a payment of $18,658, of which $900 was to be collected for foreclosure fees and $5,791 was to be collected for foreclosure costs. *Id.* In response, the plaintiff paid in full the amount quoted by the defendant to reinstate her mortgage, and the Chancery Court subsequently entered a judgment of dismissal without prejudice in the foreclosure action. *Id.* Two years later, the plaintiff commenced a class action suit against the defendant, alleging multiple claims related to alleged overcharges of attorney's costs and fees in the reinstatement quote. *Id.* at 471. Affirming the district court's dismissal of the plaintiff's complaint on the basis of the entire controversy doctrine, the Third Circuit held that the plaintiff's claims were germane to the underlying foreclosure action. Notably, the appellate court rejected the plaintiff's arguments that, because the claims arose after the pendency of the original foreclosure proceeding, she did not have a "full and fair opportunity" to bring them. *Id*. at 472-473. The court reasoned that "[c]laims are considered to be germane to a foreclosure action if they arise out of the mortgage that is the basis of the foreclosure action." *Id.* at 472 (citing *Leisure Technology–Northeast, Inc. v. Klingbeil Holding Co.*, 137 N.J. Super. 353 (1975)). Thus, because the plaintiff's claims arose "directly out of a reinstatement quote that was provided to her as an alternative to a foreclosure sale, and the excessive fees allegedly charged by [the defendant-mortgagor] would not have been charged but for the foreclosure action," the plaintiff's claims were germane to the original foreclosure action. *Id.* In addition, the Third Circuit expressly rejected the plaintiff's argument that the entire controversy doctrine did not apply because the foreclosure action was no longer pending once judgment was issued. Rather, the appellate panel found that "a court retains jurisdiction in a foreclosure action even after a final judgment, until delivery of the sheriff's deed under New Jersey

Court Rule 4:65–5." *Id.* (citing *Sovereign Bank, FSB v. Kuelzow*, 297 N.J. Super. 187, 687 A.2d 1039, 1043 (1997)).

Like the plaintiff-homeowner's CFA claim in *Coleman*, Plaintiffs' FDCPA claims in this case are similarly "germane" to the State Foreclosure Action, to which Plaintiff was a party. *See Napoli v. HSBC Mortg. Servs.*, 2012 U.S. Dist. LEXIS 121204, * 10 (D.N.J. Aug. 27, 2012) (finding that claims relating to the "payment and discharge, and incorrect computation of the amounts due," are germane to foreclosure proceedings). Indeed, Plaintiffs' claims in this case arose out of the same mortgage loan at issue in the State Foreclosure Action, so it is based on the same series of transactions. More specifically, Plaintiffs' claims arose from actions taken by Defendant in connection with mortgage late fees assessed following the entry of final judgment in the State Foreclosure Action. Plaintiffs take issue with late fees in the amount of $226.67 charged to them in February 2020 and March 2020, as well as Defendant's purported refusal to review Plaintiffs' loan modification application. Accordingly, because the loan modification application and late fees would not have been offered but for the loan delinquency, Plaintiffs' claims are germane to the State Foreclosure Action. *See Selene Finance LP*, No. 19-13650, 2020 WL 5422825, at *6.

Finally, to the extent that Plaintiffs also argue that the entire controversy does not apply because the late fees and loan modification application occurred after the Chancery Court entered Final Judgment in the State Foreclosure Action, that argument lacks merit. As demonstrated in *Coleman*, it is well-settled that the Chancery Court retains jurisdiction over the foreclosure action until either: "(1) if the home is sold at sheriff's sale, the later of ten days after the sheriff's sale or the delivery of the sheriff's deed; or (2) if the sheriff's sale is averted by payoff, until payment is made, the judgment is entered, and the case is dismissed. *Napoli v. HSBC Mortg. Servs.*, 2012

8

U.S. Dist. LEXIS 121204 at *11 (D.N.J. 2012) (citing *Hardyston Nat'l Bank of Hamburg, N.J. v. Tartamella*, 56 N.J. 508, 267 A.2d 495, 498 (1970)).

Here, Wells Fargo Bank filed a foreclosure complaint on December 19, 2017, in the Superior Court of New Jersey, Chancery Division, Monmouth County, which entered a final judgment of foreclosure in favor of Wells Fargo Bank on February 26, 2019. (Compl., Ex. B and C.) On June 11, 2019, Defendant became the loan servicer on behalf of the new mortgage holder, MTGLQ Investors. Thereafter, Defendant allegedly wrongfully charged Plaintiffs late fees and falsely represented that it had reviewed Plaintiffs' loan modification application. This alleged conduct, which Plaintiffs claim violated the FDCPA, occurred, however, after final judgment was entered in the State Foreclosure Action, and it preceded the sheriff's sale of the Property -- which has not occurred. Therefore, as in *Coleman*, since Plaintiffs' claims in this case arose from events that occurred after final judgment, but before a sheriff's sale (and there is no evidence the sheriff's sale has been averted by payoff), Plaintiffs' claims are barred by the entire controversy doctrine.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss is **GRANTED**, and Plaintiffs' Complaint is **DISMISSED** with prejudice.

Dated: May 13, 2021            /s/ Freda L. Wolfson
                                                             Freda L. Wolfson
                                                             U.S. Chief District Judge